# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3657-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

I.R.,

     Defendant-Appellant,

and

P.G.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.R.
and G.R.,

     Minors.

_____

Submitted February 24, 2020 – Decided May 1, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, FG-04-0124-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Steven Edward Miklosey, Designated counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Ashley L. Davidow, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant I.R. appeals from the April 11, 2019 judgment terminating his parental rights to his daughter A.R. and his son G.R.[1] and granting the Division of Child Protection and Permanency (Division) guardianship of both children, with the plan that their aunt and uncle adopt the children. Judge Francine I. Axelrod presided over the one-day trial, entered judgment, and rendered a comprehensive oral decision.

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d)(12).

I.R. raises the following points on appeal:

POINT I
THE TRIAL COURT ERRED IN FINDING THAT [THE DIVISION] MADE REASONABLE EFFORTS TO PROVIDE REFERRALS FOR APPROPRIATE SERVICES THAT DIRECTLY ADDRESSED ALL OF [I.R.'S] ISSUES, WHERE [THE DIVISION] PROVIDED A LONG-DELAYED REFERRAL FOR THERAPEUTIC VISITATION AND FAILED TO PROVIDE ANY EVIDENCE OF REFERRALS FOR SUBSTANCE ABUSE TREATMENT, ERRONEOUSLY PLACING THE BURDEN ON I.R. TO SEEK THOSE SERVICES ON HIS OWN.

POINT II
THE TRIAL COURT ERRED IN DECIDING THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD, WHERE THE TRIAL COURT GAVE INADEQUATE CONSIDERATION TO [I.R.'S] POSITIVE VISITATION RECORDS AT ROBIN'S NEST AND THE BONDING EVALUATIONS.

Having considered the record and applicable legal standards, we affirm for substantially the reasons expressed by the trial judge.

I.

We begin our discussion with the well-settled legal framework regarding the termination of parental rights. Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346

(1999).  However, that right is not absolute.  N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986).  At times, a parent's interest must yield to the State's obligation to protect children from harm.  N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992).  To effectuate these concerns, the Legislature created a test to determine when it is in the child's best interest to terminate parental rights.  To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11. The four prongs of the test are "not discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [judge's] function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006). The factual findings that support such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting

5

Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).

"[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." R.L., 388 N.J. Super. at 89.

## II.

We now turn to I.R.'s argument that the judge erred in finding that the Division proved each of the final two prongs under the best interests test by clear and convincing evidence. We disagree and conclude that Judge Axelrad's factual findings are amply supported by the credible evidence in the record, and her legal conclusions are unassailable. We thus affirm for substantially the same reasons expressed by the trial judge. We add only the following brief comments.

## A.

Under N.J.S.A. 30:4C-15.1(a)(3), the Division must show that it has made reasonable efforts to reunite the family by helping the parent correct the conditions that led to the child's removal. In re Guardianship of K.H.O., 161 N.J. 337, 354 (1999). This may include, but is not limited to

> (1) consultation and cooperation with the parent in developing a plan for appropriate services;

A-3657-18T4

(2) providing services that have been agreed upon, to the family, in order to further the goal of family reunification;

(3) informing the parent at appropriate intervals of the child's progress, development, and health; and

(4) facilitating appropriate visitation.

[N.J.S.A. 30:4C-15.1(c).]

"Whether particular services are necessary in order to comply with the diligent efforts requirement must . . . be decided with reference to the circumstances of the individual case before the court, including the parent's active participation in the reunification effort." In re Guardianship of DMH, 161 N.J. 365, 390 (1999).

Considering these principles, we concur with the trial judge that the Division's efforts to provide I.R. with services were reasonable under these circumstances. The children were first removed in July 2013, and the Division offered to conduct random urine screenings for I.R. and to provide him with a substance abuse evaluation. I.R. declined, claiming he was already participating in a substance abuse program through his probation. He thereafter failed to comply with random urine screens ordered by the court.

In January 2014, pursuant to a court order, the Division also offered to provide I.R. with his first month's rent if he were able to secure stable housing

A-3657-18T4

and demonstrate his ability to make ongoing payments towards housing. However, I.R. never provided any housing plan to the Division during this litigation. The Division also referred I.R. for psychological counseling at Delaware Valley Psychological Services, and a psychologist evaluated him on June 4, 2014. Based on the evaluation, the psychologist recommended that I.R. participate in therapeutic visitations, and that he obtain stable housing and complete random urine testing.

In October 2015, the children were removed from their mother for a second time and again placed with the resource parents. At this time, I.R. was regularly testing positive for Phencyclidine (PCP) and was not visiting his children consistently despite being entitled to weekly visitation. In April 2016, the Division referred I.R. to a therapeutic visitation program at Robin's Nest, where he attended therapeutic visitations between June and November 2016. While I.R. participated in the program, his attendance was erratic because of his obligations with work, probation, and numerous incarcerations. I.R. was eventually terminated from the program for missing too many scheduled visits.

The court also ordered I.R. to participate in substance abuse evaluations and random urine screenings after the children were removed from their

mother's custody for a third time in April 2018, but he failed to cooperate. At this time the Division also referred him for a psychological evaluation and granted him weekly visitation, but his visits were still inconsistent and sporadic, and he still provided no evidence that his housing situation had improved. The Division also referred him for an updated substance abuse evaluation in December 2018 after it had filed the instant complaint seeking to terminate his parental rights, but he declined to attend.

Based on these facts, the trial judge determined that I.R. had only infrequently taken advantage of the numerous services offered by the Division. She stressed that I.R. continued to relapse on PCP, and in large part failed to cooperate with the Division or comply with his court-mandated requirements. The judge emphasized that he failed to submit to urine screens or undergo updated psychological evaluations. Based on these facts, the judge concluded that the services offered by the Division were reasonable.

We concur with the trial judge, and conclude that the record shows that the Division adequately provided I.R. with necessary services, including offers to provide him with urine testing, substance abuse evaluations, psychological counseling services, visitation with his children, and one months' rent, throughout the pendency of this litigation. See N.J.S.A. 30:4C-15.1(c). That

I.R. chose to take advantage of the services offered to him only sporadically does not render the Division's efforts in this matter unreasonable. See DMH, 161 N.J. at 390. Indeed, the Division provided these services for much longer than the "twelve-month timeframe mandated by N.J.S.A. 30:4C-61.2(a)(2) and N.J.S.A. 9:6-8.54(b)." N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 489 (App. Div. 2012).

We also find no merit in I.R.'s argument that the Division's delay in facilitating therapeutic visitation rendered its efforts to provide him with services unreasonable. Any such delay was likely attributable to his lack of candor and cooperation with the Division, as well as his incarcerations during this period. For these reasons, we find that the trial court's finding on prong three is supported by substantial credible evidence in the record.

B.

To satisfy N.J.S.A. 30:4C-15.1(a)(4), the Division need not "show[] that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355. Instead, the issue "is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." Ibid. The underlying concern of

10

the fourth prong is the child's need for permanency within a reasonable amount of time. J.C., 129 N.J. at 26.

To satisfy this prong, "[the Division] must 'offer testimony of a "well-qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation" of the child's relationship with both the natural parents and the foster parents.'" N.J. Div. of Youth & Family Servs. v. A.R., 405 N.J. Super. 418, 442 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 281 (2007)). A comparative bonding evaluation between a child and her natural parent is generally required because the child's relationship with foster parents "must be viewed not in isolation but in a broader context that includes . . . the quality of the child's relationship with his or her natural parents." Id. at 439 (quoting J.C., 129 N.J. at 18) (alteration in original).

We find that the trial judge properly determined that the termination of I.R.'s parental rights would not do more harm than good. The judge based this determination principally upon the testimony and clinical findings of Dr. Ronald Gruen, who had conducted bonding evaluations between the children and both I.R. and the resource parents. Gruen had concluded that no psychological bond existed between I.R. and the children, who viewed him as

nothing more than a "playmate," and from whom the children have no expectation of any parenting. In that regard, Gruen determined that the children would suffer no significant emotional harm if the court were to terminate I.R.'s parental rights to the children.

In contrast, Gruen concluded from his bonding evaluation between the children and the resource parents that the aunt and uncle were the children's de facto parents and that the children had formed secure attachments to them. He emphasized that the resource parents acted as their caregivers for significant periods since July 2013, and tended to the needs of both children, including the specialized needs of G.R., who suffers from developmental delays and otolaryngological issues that require therapy and medical intervention.[2] He also determined that there was mutual interest in adoption by both the children and the resource parents, and found the resource parents to be both intelligent and nurturing as parental figures. Based on these determinations, Gruen found that to remove the children from the resource parents would likely result in significant emotional harm to the children. He averred that this would cause

---

[2] While not conclusively established, G.R.'s problems may stem from his mother's abuse of PCP, as both she and G.R. tested positive for the substance at the time of G.R.'s birth, and both she and I.R. abused the drug throughout the pendency of this matter.

the children to experience anxiety, insecurity, depression, abandonment, and regression.

From Gruen's testimony, the judge concluded that the disruption of the children's relationship with their aunt and uncle would be more harmful to them than the termination of I.R.'s parental rights would. I.R. provided no evidence refuting Gruen's clinical findings, and the Division otherwise met its burden under N.J.S.A. 30:4C-15.1(a)(4). See A.R., 405 N.J. Super. at 439, 442. We accordingly defer to the trial judge's well-founded conclusion on this issue, which was based on ample credible evidence in the record.

To the extent we have not addressed any of I.R.'s remaining arguments, we find that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION